Okay, Mr. Bragstaff. Good morning. May it please the Court, Mr. Bragstaff. We're shifting now from a case to a case where the patent owner is asking the Court to actually give weight to the terms that are literally in the claims. So, this is the 2111 appeal. I'll be arguing both. This is the one that deals with the claim requirement of communicating the identities of faults and displaying the identified faults. So, our position is that the Board erred by removing those requirements, and it's important to look at both of those terms. You have to have identities of faults. So, identities, something where you can figure out which faults are being identified. Well, even assuming that that's the correct claim construction, the Board found that the prior art disclosed that, right? That's right. So, why were they wrong about that? I didn't read your briefs actually as disputing that the Crimmins, if you allowed the incorporation, showed both a one-quarter second flash and a two-second flash, which would be two different identifications, right, for two different conditions. You don't dispute that if you take it as a whole, Crimmins as a whole, that it discloses that, right? No, I do dispute that, that if you take it as a whole, Crimmins does not dispute that. Our position is that the Board didn't take it as a whole. I'm sorry, you don't dispute that if you take it as a whole, that it discloses both? No, I do dispute that if you take it as a whole. How can that not be the case? Because I thought it was pretty clear that there were two different modes with two different kinds of flashing. The only way that the Board resolved that was by saying, well, regardless of what the source code actually says, and that was their language, regardless of what the source code says, we're going to find that the reference as a whole teaches two different behaviors. The problem is you can't set aside a third of the document and then say we're considering the document as a whole. There's a potential for inconsistencies here, and the Board had to resolve whether there was an inconsistency or not, and then, if there was, what to do with it. And the code, and Dr. Davis's undisputed analysis of that code, he's the only expert that analyzed the code in this case, was that it did the same thing as the other comment did. If you look at the comments, one says, I think, blink, and then the other one says flash every quarter second. So one of them is indeterminate in the timing. The other comment tells you what the timing is. So the question in looking at those two comments is, is the generic comment the same as the specific comment, or is it something else? And Dr. Davis went to the code and said, yes, it is the same thing. They're both quarter seconds. Well, they don't have to believe him, right? They don't have to believe him, but that's not what they did. They didn't say, we don't believe Dr. Davis. They didn't say, we disagree with Dr. Davis. They said, we're going to set aside what the code says. Setting it aside, regardless of. What page are we talking about here? Regardless of, I believe, is 26 of the board opinion. So appendix 26. What language do you want? Yeah, I'm looking for that right now. Let me check. We cited it in the blue. We can pull that from there. It's actually appendix 30. 30. So if you go to the full paragraph, the big paragraph that takes up most of the page, and go down one, two, three, four, five lines. So what the board is doing there is saying, well, the specification says flash every two seconds for this fault about exceeding the count. You have two faults here. One is you've exceeded the count. You have to do some maintenance on it. If you set 10,000 opens and closes. Service cycle is expired. Exactly. So maybe you have to replace some parts or oil something. The other one is an overflow. So for example, the chip, for some reason, the microprocessor has too high of a value. You don't know what happened. And those are the two faults that we're talking about. And what the board said here is, well, the spec says flash every two seconds. The comment for the other error says flash every quarter second. So these are two different things. Right. What's wrong with them? Because the code itself says flash every quarter second for both of them from the only person who analyzed the code. So the answer is, if you look at the entire reference, you have comments that say every quarter second and then it's silent for the 10,000 count error. You have code that says every quarter second for both of the errors. And then you have a specification that says every two seconds. And so the position we took is when you look at all of those comments, code, and specification, that tells you that the specification is talking about something other than the code and comments. The board said, well, regardless of this functionality, regardless of what the code actually does, we have two seconds and a quarter second. We're done. What they say is the description describes two different modes for two different faults. No, the description describes a two second count for the over 10,000 cycles count. And then the question is whether that description should be melded with the code and the comment as a single example or whether the description is describing a different example. So you have an example in the code where both are a quarter of a second. Because, as Dr. Davis said, the actual code itself is a quarter second for both errors. The comments are quarter second and open-ended. So if you take his testimony into play and it wasn't disputed, you have quarter second for both errors. You then have a specification that says two seconds for one of the errors. So your contention is that the code and the specification are not consistent with each other? Well, I wouldn't say that they're not consistent, that they're describing two different examples. That part of the specification is describing a different example. And it's not like there's, I wouldn't call it a separate embodiment because this isn't the, whether you do it for two seconds or a quarter of a second, that's not where you would carve out a different embodiment. But what they're doing is describing two examples of how you could carry it out. Whether you do it as two seconds, quarter second, it's not something that you would carve out into a separate embodiment. But if you take into account Dr. Davis' testimony, which the board said regardless of his testimony, if you take it into account and it's undisputed, nobody else analyzed that code, you have quarter second for both of the errors. And so you have indefiniteness for which error is happening and therefore you don't identify. So our position is that the board can't say that it's looking at the entirety of the document after saying I'm going to carve out one third of the, I don't know the chunk of the document, but I'm still looking at the whole thing. Just can't make that determination by throwing away part of the document where we had identified an issue and then saying, well, what remains solves the issue for us. That's a big picture of that issue. Separately, the board could also get there on the more general incorporation by reference issue, which is that the incorporation may have brought in that embodiment in the 641 patent. So we call it interleaving different teachings and we say that for anticipation you have to show not only that it's in the document, so they have a general incorporation by reference, it's in the document. But you have to show that it's in there in the same way that the claim recites. That's the nub of our general incorporation by reference argument. So what they point to is their general incorporation by reference, which is way up at the top of the patent, which is common, and it just says I incorporate by reference this other document. Then there's a statement way down, it's the second to last paragraph of Crimmins that says, attached is exhibit A of code. I would say there's no explicit connection between those statements. They're at opposite ends of the patent. There's nothing in the patent that suggests that they are connected, that somehow the exhibit A at the end is talking about exhibit A of the incorporated reference rather than the patent. I'd also say that it's not explicit by where it's located, it's not explicit by its language, and so we have to imply that somehow they are connected. And our argument is that is obviousness. Why aren't they connected by that simple reference? I mean, that's what incorporation by reference is. You don't make a full detailed explanation as to why you're accepting a particular document. Why wouldn't the mere referring to the document be enough? Referring to it does bring it in, but it doesn't connect up the different parts. So you have basically an anthology now, right? You have Crimmins' 641 specification, which is missing its attachment. We know that. You don't have a problem that the exhibit is incorporated. Right, generally incorporated. Our problem is that the incorporation does not make that exhibit A reference point over to the other exhibit A as opposed to the exhibit A that was supposed to be attached to this document. And this is anticipation law, right? And so under that, it has to necessarily be pointing over there. It's not enough that you could figure it out if you did some work in a skilled artist and could figure this out. If it's not explicitly pointing to the other exhibit A, then it necessarily has to point there. We know it doesn't necessarily point there because, in fact, it points to the original exhibit A. Now they'll say, well, but at the end of the day, the exhibit A's match in substance. But that doesn't count under anticipation law because the only way to find out that they match in substance is to go to a third document, the other application, and look at them and compare them and so on. I thought the other application was incorporated. No, the second document is the other application that was incorporated. What I'm talking about, the third document is the application for Krimmen 641, which is not incorporated by references. It's where the actual exhibit that's being referenced in Krimmen 641 exists. So you have Krimmen 641 pointing to something that doesn't exist. And then you have the other Krimmen's application over here with its exhibit A. And to get where they need to go, this reference to exhibit A in Krimmen 641 has to point to the incorporated exhibit A. And our position is that it doesn't under the law for anticipation because it could obviously, under obviousness, you might be able to figure out that it does, but this isn't a case for obviousness. This is a case for anticipation. So they have to show that it necessarily points to the other exhibit A. And, in fact, we know that it doesn't. It points to its own exhibit A. It just turns out that that didn't get printed, and so that's the problem in finding anticipation. I'll reserve my time. Okay. Mr. White? Yes, Your Honor. Thank you. May it please the Court. Chamberlain's lead argument in their briefs was that the Board adopted a faulty claim construction position, but that argument was not made below and was thus waived or forfeited. But I'm going to skip over that argument. I think it's addressed well in the briefs and focus on the second issue, which I think, Your Honors, hit the nail on the head with the questions to counsel here. And that is even if the arguments that they've raised are considered on the merits, they fail for multiple reasons. As you noted, if the Court determines that the claims require faults to be uniquely identified, which we don't think is a requirement of the claims based upon the proper reading, but even if you go that far and find that that is a requirement, Crimmins does identify unique faults because it provides visually distinct displays for at least two identified faults. You identified it, and the Board relied upon it, finding that there were two different LED behaviors for two different identified faults. Now the only challenges Chamberlain has raised to those findings, I think, can fall into three different buckets. First, they take issue with the conclusions about incorporation by reference, which we heard some about and I'll address. Second, they argue that there's purported inconsistency between the source code and the comments of the source code. And then third, they seem to challenge whether or not there's two embodiments or a single embodiment, although I heard them kind of back off from that argument today. But let me take those in order. Chamberlain argues that Crimmins is silent on how the source code from the parent application is related to Crimmins' disclosure. We just heard them say that. It's in the reply brief. They went so far in the reply brief to say, no citation, no citation that might direct the reader to useful sections of the code was included in the Crimmins per art reference. That's on page 14 of the reply brief. But yet Crimmins includes not one but two different paragraphs that work in concert to provide specific details as to what's incorporated from Exhibit A. Crimmins includes the general statement that we heard about, that's at Appendix 484, Column 1, Lines 3 through 6, stating that this is a continuation of the parent application, which admittedly includes the source code. And then Crimmins has a second, more specific statement near the end. That statement says, Exhibit A... Where are you reading from? I'm reading from Appendix, page 489. That's the patent. And it's Column 12. Column 12, Lines 25 through 29. That's where it says, Exhibit A is a copy of source code, source listing for computer software to operate a commercial door operator, having the functions described above and including the following modules. And it points and calls out specifically five separate modules. Now why is that important? Because each of those five modules is found in the source code and the comments that we and the board relied upon are found in those five modules. So their statement that no citation in Crimmins might direct the reader to useful sections of the code, I think can't be reconciled with the actual disclosure of Crimmins. Crimmins says, Code is attached. Here's five sections to look at, and the comments that are relevant here are found in the comments to those five sections. So in light of that disclosure, we believe the board properly found that somebody of skill in the art would have known to look to Exhibit A in the prior art as being incorporated by reference. There was substantial evidence, including One World's expert, to support that finding. And during the hearing, I think this is important, Chamberlain expressly conceded that Crimmins incorporated the entirety of the earlier application by reference. This is Appendix Site 2246. The question from Judge Arbs was, counsel, let me ask you a general question. The Crimmins patent incorporates the parent application by reference in its entirety, right? The answer from Chamberlain's counsel was yes, Your Honor. The board relied upon that concession in its final written decision, so we don't think there's really any dispute that Exhibit A, the source code is properly incorporated by reference and properly relied upon by the board. So what do you understand the board to be saying when it says put aside the actual functionality here? That, I think, gets to their second argument that they say there's a conflict between the code itself and the comments to the code. The comments to the code clearly identify... Where do we see the comments to the code? What page is that at? I don't know if I can give you that site. I'm going to ask Alex to see if he can find that. At 1112? So the comments are actually... My copy of the brief is highlighted. I don't know if yours is. The comments we've highlighted in yellow. At 11 and 12. So those are the comments. So the code is the things to the left are the semicolons. The comments are the things to the right are the semicolons. So there you have comments about how the LEDs are activated. The top one is the one that flashes every quarter second. The second one is the one that blinks every 2 seconds for 2 seconds. So I think their argument here is that while the comments say that if you look at the actual code itself the code doesn't implement that. Where is the 2 second flashing? Where do we find that? So the 2 second flashing is described in the specification which the board found to be consistent with the second description here flash LED call service. So they connected the 2 second description of the specification with the second comment here. And so I think what Chamberlain's argument is is if you look at the actual code, the stuff to the left of the semicolon it doesn't necessarily do 2 different things in 2 different sections of code. But that doesn't negate the fact that the board found properly that if you consider the entirety of the disclosure it clearly discloses to a person of ordinary skill in the art that you can do 2 different things with 2 different conditions. That's what our expert testified to. So I do take issue with one of the statements that was made to say that their expert was the only one that analyzed the code and testified about this. Our expert, Mr. Lipoff, testified that the code actually does not support their position on this. So he analyzed the interrupt sequence and said to a person of ordinary skill in the art the comments disclosed using 2 different conditions under 2 different scenarios. So if you consider the entirety of the reference I think it indisputably supports our position and supports the board's conclusion. And it does not support their position. Does that answer your question, Your Honor? The last argument that they made was that the board erred in putting together 2 separate disclosures. I think the quote was separate disclosures. Here they didn't say embodiments today. I think before they have argued that there's different embodiments. But I think that can be dismissed for a couple of reasons. As an initial matter, the board found that the comments to the code standing alone taught different behaviors for different faults. So if you just look at the comments alone you've got 2 different descriptions in there. You don't have to talk about whether or not that can be reconciled with the actual code or with what's in the specification. The comments alone disclose 2 different behaviors. That is enough to invalidate the claims. But the board went further and they made specific findings on this issue. They found that the source code in the criminal specification referred to a single embodiment, not 2 different embodiments. That's Appendix 29. So this idea that there was somehow a miscombination of things was raised before the board, addressed by the board and there's substantial evidence to support that conclusion. So at the end of the day, even if Chamberlain were right in arguing that the apparatus limitation requires at least 2 different behaviors that correspond to distinct faults, that sort of uniquely identified requirement that they talked about, substantial evidence supports the board's findings that criminals disclose that limitation. Unless you've got additional questions or want me to talk about the waiver issue I would cede my time back to the court. Okay, thank you. I just want to talk about the red brief pages that you were looking at, the comment pages. To help make clear what our position is on what the testimony was on this teaching. It's the top 2 comments on page 11 of the red brief. One comment says, turn the LED on and off every quarter second. The second comment says, flash LED. Note that there's no difference between flash or blink or pulse. Those terms have all been used interchangeably. You can look, for example, in petitioner's petition at A116 to 117. So the use of the words pulse, flash, turn on or off, that does not make a difference. So what you have is one of them says pulse every quarter second. The other one says pulse, but doesn't say how often. But the spec says 2 seconds. The spec says, in its example, 2 seconds. Then the question is, does that fill in the gap for this generic description? And our answer was, it can't because the code says every quarter second. The code itself, right next to this comment, is every quarter second. Your problem is this seems to be a fact finding by the board but it's a fact finding that set aside the code. They can certainly make a decision about whether the code trumps the spec or whether the code is inconsistent with the spec or what have you. But they can't say, well, regardless of what the code says, setting the code aside, we're going to find the other two things consistent. Let's hypothetically suppose that in these first two things, the first one said a quarter second and then the second one actually said flash every 2 seconds. But the testimony was that the flash every 2 seconds was inconsistent with the way the code actually worked. Would you say that under those circumstances the board can't find anticipation? I think on that general question, they could. There could be testimony about inconsistency between the code and the comment that the comment is supposed to reflect the code. But I think on that they could, but that's not what they did here. They went to the spec and they said, well, the spec describes this because there's nothing to the contrary. It's talking about this. And so our conclusion is there's no inconsistency between 2 seconds and a quarter second. But the only reason they didn't see an inconsistency is they didn't look at the third piece of evidence, the actual code. Now, if they looked at the code, they could say, well, here's why the comment doesn't match the code but matches the spec or what have you. They might be able to do that, but they didn't do it. And it's important not just that they failed to do that but that Petitioner didn't do it either. Petitioner says that Mr. Lippoff... I think we're about out of time. Thank you.